IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA

**G.S. GELATO & DESSERTS, INC.**

        **Plaintiff,**

**v.**                                     **Case No.:**

**TECNOWERK PLAST S.R.L,**

        **Defendants.**

## COMPLAINT FOR DAMAGES

Plaintiff G.S. Gelato & Desserts, Inc. ("G.S. Gelato") for its complaint against defendant Tecnowerk Plast S.R.L. states as follows:

### INTRODUCTION

1. G.S. Gelato produces and sells frozen desserts—specifically gelato and sorbet—to retail and wholesale customers in the United States. G.S. Gelato contracted with defendant to manufacture its containers and lids for its gelato and sorbet. This action arises from defendant's shipment of defective lids for its containers and its failure to cure those defects, causing G.S. Gelato substantial damages and, what's worse, putting G.S. Gelato's customers at risk were it not for G.S. Gelato's quality assurance program.

### THE PARTIES

2. G.S. Gelato is a Florida corporation with its principal place of business in Fort Walton Beach, Florida.

1

3. Defendant Tecnowerk Plast S.R.L. is a Societa a Responsabilita Limitata under the laws of Italy with its principal place of business in Area Artigianale BL, Italy. None of its owners or members are citizens and residents of the State of Florida.

## JURISDICTION AND VENUE

4. The Court has original subject matter jurisdiction under 28 U.S.C. § 1332 in that this action is a civil action between citizens of a State and citizens or subjects of a foreign state wherein the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

5. Venue is proper in this judicial district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, in this judicial district.

## FACTUAL BACKGROUND

6. G.S. Gelato was established in 1996 to produce and sell authentic Italian gelato and sorbet in the United States.

7. For the past eighteen (18) years, G.S. Gelato has sold its products to its wholesale and retail customers throughout the United States.

8. All of G.S. Gelato's gelato and sorbet is prepared and distributed out of its headquarters in Fort Walton Beach, Florida. G.S. Gelato's manufacturing plant can produce up to 1.3 million gallons of product per year.

9. G.S. Gelato's frozen desserts are sold in supermarket and retail stores throughout this judicial district, the state of Florida, and the United States.

10. In 2013, G.S. Gelato contracted with the defendant, an Italian food packaging manufacturer, to produce custom-labeled cartons and lids for its gelato and sorbet.

11. Over the course of the relationship, G.S. Gelato has purchased and paid for nearly 2 million packages from defendant.

12. Defendant knew that G.S. Gelato bought the cartons and lids for use in its gelato and sorbet business, and that G.S. Gelato sold its products to the public through its wholesale and retail distribution channels.

13. G.S. Gelato placed its orders for goods by sending written purchase orders by email to defendant and defendant confirmed each order in writing and by invoice.

14. In February 2015, G.S. Gelato discovered that the defendant had filled G.S. Gelato's orders with hundreds of thousands of defective lids. There were two defects:

15. First, many of the lids simply would not close or required additional labor to force them closed.

16. Second, after the cartons were filled with gelato or sorbet—when G.S. Gelato was able to get them to close at all—they were put into freezers for cold storage and transportation. G.S. Gelato discovered that during cold storage or transportation, the lids would not stay closed. This is a serious problem because G.S. Gelato and its customers require tamper-evident packaging for health and safety reasons.

17. G.S. Gelato promptly notified defendant of the defects.

18. During subsequent conversations, defendant agreed that the lids were defective.

19. These problems persisted, and defendant visited G.S. Gelato's plant to inspect the defective lids on April 11, 2015.

20. G.S. Gelato showed defendant the twenty-four (24) pallets of products that were unable to ship because of the defects.

21. After its inspection, defendant conceded that the lids were defective. Specifically, defendant's sales manager, Mauro Caforio, represented to G.S. Gelato that the problem was due to using a defective "polymer" during manufacturing of the lids.

22. On information and belief, defendant knew or should have known of the defects prior to the shipping of the defective goods.

23. While at G.S. Gelato's plant, defendant promised to send 500,000 replacement lids—free of charge—on a schedule negotiated by the parties with air freight to fit the immediate needs and ocean freight for the remainder.

24. However, after sending just 65,000 lids, defendant failed to send the remaining replacement lids.

25. G.S. Gelato was forced to shut down its production to sort, replace, discard, and move products with the defective lids which caused delays in production for G.S. Gelato's wholesale and retail customers.

26. At least one customer indicated that as a result of the delays it would not increase its orders from G.S. Gelato as it had otherwise planned.

27. As a result of defendant's sale of defective goods and failure to provide replacement lids, G.S. Gelato has incurred damages in excess of $75,000 including lost sales, storage costs, destroyed and unsalable product, additional labor, replacement costs, and costs incurred to find an alternative supplier, among others.

28. G.S. Gelato fully performed all of its obligations.

## COUNT I – BREACH OF CONTRACT

29. G.S. Gelato repeats and realleges ¶¶ 1 through 28 of its Complaint as if fully set forth herein.

30. G.S. Gelato and defendant entered into a valid and enforceable contract after defendant offered to manufacture and G.S. Gelato agreed to buy certain goods.

31. Defendant breached the contract by failing to deliver goods that met the specifications ordered by G.S. Gelato and by failing to replace the defective goods.

32. Defendant's breaches have caused G.S. Gelato damages in an amount to be shown at trial.

### COUNT II – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

33. G.S. Gelato repeats and realleges ¶¶ 1 through 32 of its Complaint as if fully set forth herein.

34. Defendant sold cartons and lids to G.S. Gelato.

35. As a seller of food packaging, defendant impliedly warranted that its cartons and lids were fit for the ordinary purposes for which such cartons and lids are used.

36. Defendant is a merchant with respect to cartons, lids, and goods of that kind.

37. The lids sold by defendant were not merchantable at the time of sale.

38. Defendant's breach of the implied warranty of merchantability caused G.S. Gelato damages in an amount to be shown at trial.

### COUNT III - BREACH OF THE IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURCHASE

39. G.S. Gelato repeats and realleges ¶¶ 1 through 32 of its Complaint as if fully set forth herein.

40. As a seller of food packaging products, defendant impliedly warranted that its cartons and lids were fit for the particular purpose for which they were sold.

41. Defendant knew that G.S. Gelato was using the cartons and lids to manufacture, sell, and distribute frozen gelato and sorbet.

42. G.S. Gelato relied on defendant to select the appropriate materials and products for that purpose.

43. The lids provided by defendant were not suitable for that particular purpose.

44. Defendant's breach of the implied warranty of fitness for a particular purpose caused G.S. Gelato damages in an amount to be shown at trial.

### COUNT IV – VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

45. G.S. Gelato repeats and realleges ¶¶ 1 through 28 of its Complaint as if fully set forth herein.

46. The Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. §§ 501.201, et seq., is designed to protect consumers and legitimate business enterprises from those who engage in unfair methods of competition, and unconscionable, deceptive, and unfair trade practices in the conduct of any trade or commerce.

47. G.S. Gelato is a business and a consumer within the meaning of FDUTPA.

48. Defendant engaged in trade or commerce by offering, marketing, selling, and providing food packaging, including lids.

49. Defendant knew or should have known that its lids were defective and willfully concealed and sold defective lids to G.S. Gelato for distribution to the public.

50. Defendant also engaged in unconscionable, deceptive, and unfair trade practices by promising to cure the defects and to ship replacement lids and G.S. Gelato reasonably relied on such misrepresentations to its detriment.

51. Defendant's conduct as set forth herein constitutes a willful violation of FDUTPA.

52. As a direct and proximate cause of defendant's violation of FDUTPA, G.S. Gelato has been damaged in an amount to shown at trial.

53. Pursuant to Fla. Stat. § 501.211, G.S. Gelato seeks its attorneys' fees and costs incurred in this action and all other relief to which it may be entitled.

WHEREFORE, G.S. Gelato demands judgment in its favor and against defendant on all causes of action in an amount to be proven at trial, together with an award of the costs and expenses, including attorneys' fees, incurred herein.

### JURY TRIAL DEMAND

Plaintiffs demand a trial by jury on all claims so triable.

Dated: July 14th, 2015

Respectfully submitted,

_/S/ Nathan D. Boyles_
NATHAN D. BOYLES
Nathan D. Boyles, P.A.
Florida Bar No. 0050403
BRIAN CORLEW
Florida Bar No. 0099357
204 North Main Street
Crestview, Florida 32536
Tel. (850) 689.8505
Fax. (850) 689.8510
Nathan@crestview-law.com
Brian@crestview-law.com